**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LILLY HOGUE, | 3:08-cv-00042-ECR (VPC) |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | |
| Defendants. | July 29, 2009 |

This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for remand (#20). Defendant opposed and filed a cross-motion to affirm (#23). Plaintiff replied and opposed defendant's motion to affirm (#25). For the reasons set forth below, the court recommends that plaintiff's motion for remand (#20) be denied and defendant's cross-motion to affirm (#23) be granted.

**I. ADMINISTRATIVE PROCEEDINGS**

Plaintiff Lilly Hogue ("plaintiff") filed an application for Social Security disability insurance benefits on April 28, 2004 (#7-2, Ex. 1). Plaintiff alleges disability based on major depression, arthritis in her hip, neck, spine, ankle, and fingers, chronic obstructive pulmonary disorder, a stomach ulcer, irritable bowel syndrome, and constant tinnitus in both ears (#8, Ex. A, ¶ 2). Plaintiff's claim was denied initially on October 18, 2004, and upon reconsideration on February 7, 2006 (#7-2, Ex. 1). Plaintiff requested a hearing, and on March 13, 2007, plaintiff testified before Administrative Law Judge ("ALJ") Sandra Rogers. *Id*. The ALJ found the

plaintiff not disabled on June 28, 2007. *Id*. Plaintiff requested administrative review, but the Social Security Administration Appeals Council ("Appeals Council") denied review on October 26, 2007 (#7-2, Ex. 2). Having exhausted all administrative remedies, plaintiff filed a complaint for judicial review on January 23, 2008 (#1).[1]

## II.  BACKGROUND

Plaintiff was born on November 5, 1953, and was fifty-three years old at the time of her hearing (AR 40, 365). Plaintiff completed high school (AR 365). Plaintiff's past employment includes work as a cashier (AR 365-66). Plaintiff alleges that she became disabled on December 1, 2003, due to degenerative disc disease, depression, migraine headaches, hip pain, status post fractures of the fingers, and asthma (AR 29, #20, p. 4).

Following the 2007 hearing, the ALJ found plaintiff not disabled because she was capable of performing work that exists in significant numbers in the national economy (AR 40). Specifically, the ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.
>
> 2. The claimant has not engaged in substantial gainful activity since December 1, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).
>
> 3. The claimant has the following severe impairments: degenerative disc disease and depression (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925

---

[1] Defendant previously filed a motion to dismiss plaintiff's complaint because plaintiff failed to initiate this action within the statute of limitations (#7). The court denied defendant's motion, concluding that good cause existed to toll the statute of limitations (#s 10 & 11).

2

and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work at a light exertional level, with a limitation to the performance of simple, repetitive tasks.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 5, 1953 and was 50 years old, which is defined as an individual closely approaching advanced age, on the disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job sills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2003 through the date of this decision (20 CFR 404.1520(g) and 416.920(g).

(AR 29-41).

### III. STANDARD OF REVIEW

The court must uphold the decision of an administrative law judge if the ALJ properly applied the correct legal standards and his findings of fact are supported by substantial evidence in the record. *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); 42 U.S.C. § 405(g). "Substantial evidence" has been defined as "relevant evidence which a reasonable person might

3

accept as adequate to support a conclusion." *Matthews v. Shalala,* 10 F.3d 678, 679 (9th Cir. 1993); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *See Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), *citing Smolen*, 80 F.3d at 1279. "To determine whether substantial evidence exists [the court must] look at the record as a whole, considering both evidence that supports and undermines the ALJ's findings. However, if the evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citations omitted). The ALJ alone is responsible for determining credibility, and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

## IV.  DISCUSSION

Plaintiff petitions this court to remand the ALJ's decision based on four errors: 1) The ALJ improperly used the medical vocational guidelines in finding plaintiff not disabled, rather than consulting a vocational expert ("VE"), despite plaintiff's non-exertional limitations; 2) The ALJ improperly rejected the opinion of two of plaintiff's treating physicians; 3) The ALJ did not consider the side effects of plaintiff's medication; and 4) The ALJ improperly found that plaintiff's history of migraines as "not severe" (#20). Defendant contends that the ALJ applied the correct legal standards and that there is substantial evidence to support the ALJ's conclusions. Therefore, the ALJ's decision should be affirmed (#23).

### A.   Legal Framework

Pursuant to the SSA, the Secretary has adopted regulations which establish a formalized, five-step sequential evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The Administrative Law Judge considers: (1) whether the person is engaging in substantial gainful activity; (2) severity of the alleged impairment; (3) whether the impairment

4

meets or equals a listed impairment and meets the duration requirement; (4) whether the individual is capable of doing work he or she has done in the past; and (5) whether the impairment prevents the person from doing any other work. *Id.* If at any point in the five-step inquiry it is determined that a claimant is or is not disabled, further review is unnecessary.

### B.  ALJ's Use of the Medical Vocational Guidelines

Plaintiff claims that the ALJ was not permitted to use the Medical Vocational guidelines ("grids") to find plaintiff not disabled. Rather, because plaintiff suffers from both exertional and non-exertional limitations, "basic law" required the ALJ to consult a VE to determine plaintiff's disability status (#20, p. 5). Defendant's position is that the ALJ may establish that a claimant can perform a significant number of jobs existing in the national economy "via the grids or via vocational expert testimony" (#23, p. 3, citing *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). Plaintiff's non-exertional limitation did not preclude use of the grids because plaintiff maintained the ability to perform unskilled work, which is included in the grids rule 202.13. *Id.* p. 4-5.[2] Plaintiff counters that defendant fails to cite to the correct law, and that an ALJ cannot use the grids to make a finding of not disabled when the plaintiff has non-exertional limitations (#25, p. 2).

The ALJ found that plaintiff had the RFC to perform work at a light exertional level, with a limitation to the performance of simple, repetitive tasks (AR 31). Based on this RFC and plaintiff's age, education, and work experience, the ALJ determined that there are jobs that exist in significant numbers in the national economy that plaintiff can perform (AR 40). The ALJ

---

[2]Defendant contends that the ALJ's citation to grid rule 202.14 rather than 202.13 was harmless error. Grid rule 202.14 applies to an individual who is skilled or semi-skilled rather than someone who is unskilled like plaintiff. However, the ALJ's citation to the wrong grid "was harmless error because the grids still applied and still directed a finding of non-disability." *Id.*

5

reached this conclusion by applying the grids, stating "[w]hen the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of 'disabled' without considering the additional exertional and/or nonexertional limitations (SSR 83-12 and 83-14)." *Id*. The ALJ determined that "a finding of 'not disabled' is directed by Medical-Vocational Rule 202.14." *Id*.

Plaintiff argues that SSR 83-12 and 83-14 precluded the ALJ from basing her decision of non-disability solely on the grids. Rather, because plaintiff suffers from a non-exertional impairment, the ALJ was permitted to use the grids as a framework only, and was required to consult a VE (#20, p. 5). Social Security Ruling 83-12 states that its purpose is to "clarify policies applicable in using the numbered table rules in Appendix 2 of Subpart P of the regulations as a framework for adjudicating claims in which an individual has only exertional limitations."

Social Security Ruling 83-14 states that its purpose is to "clarify how the table rules in Appendix 2, Subpart P, Regulations No. 4, provide a framework for decisions concerning persons who have both a severe exertional impairment and a nonexertional limitation or restriction." The ruling "also explains how to evaluate the vocational effects of nonexertional impairments within the context of the exertionally based table rules where claimants or beneficiaries also have severe exertional impairments that limit them to sedentary, light, or medium work." *Id*. Deficiencies in mental activities are described as nonexertional. *Id*. *2. "Where a person cannot be found disabled based on strength limitations alone, the rule(s) which corresponds to the person's vocational profile and maximum sustained exertional work capability... will be the starting point to evaluate what the person can still do functionally." *Id*. "Use of a vocational resource may be helpful in the evaluation of what appear to be 'obvious' types of cases. In more complex situations, the

6

assistance of a vocational resource may be necessary. The publications listed in [20 C.F.R.] sections 404.1566 and 416.966... will be sufficient for relatively simple issues. In more complex cases, a person or persons with specialized knowledge would be helpful." *Id*. *4. The ruling further explains that certain nonexertional limitations will greatly diminish the "unskilled light occupational base," while others will have little or no effect on the jobs a claimant can perform. Specifically, a visual impairment that causes a person to be a hazard to self and others would greatly diminish the job base. However, the inability to ascend or descend, crawl, use fingertips to sense the temperature or texture of an object, or environmental restrictions, "would not significantly affect the potential unskilled light occupational base." *Id*. *5. "Where nonexertional limitations or restrictions within the light work category are between the examples above, a decisionmaker will often require the assistance of a [vocational specialist]." *Id*.

Although plaintiff cites no case law to support her position that SSR 83-14 required the ALJ to rely on the testimony of a vocational expert, numerous Ninth Circuit cases have addressed this issue. The Ninth Circuit has stated that an "ALJ can use the grids without vocational expert testimony when a non-exertional limitation is alleged because the grids 'provide for the evaluation of claimants asserting both exertional and non-exertional limitations.'" *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007), quoting *Razey v. Heckler*, 785 F.2d 142, 1430 (9th Cir. 1986). However, the grids are inapplicable and an ALJ must solicit VE testimony "'[w]hen a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations.'" *Id*., quoting *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988).

The plaintiff in *Hoopai* argued that because the ALJ determined his depression to be a severe impairment at step two, then it must constitute a significant non-exertional limitation at

step five such that the assistance of a vocational expert is required. *Id*. The Ninth Circuit rejected this argument, finding that "the severity of limitations at step five that would require use of a vocational expert must be greater than the severity of impairments determined at step two." *Id*. at 1076. Therefore, the court held that "satisfaction of the step-two threshold requirement that a claimant prove her limitations are severe is not dispositive of the step-five determination of whether the non-exertional limitations are sufficiently severe such as to invalidate the ALJ's exclusive use of the grids without the assistance of a vocational expert. Instead, an ALJ is required to seek the assistance of a vocational expert when the non-exertional limitations are at a sufficient level of severity such as to make the grids inapplicable to the particular case." *Id*. Particularly applicable to the present case, the Ninth Circuit also stated that it had "not previously held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation." *Id*. at 1077.

As an initial matter, the court notes that the ALJ did question a VE at plaintiff's hearing. The VE testified that plaintiff could not perform her past relevant work (AR 376). However, a person who could perform only light work and who was limited to simple, unskilled work could perform other jobs, including fast food worker, unskilled cashier, and information clerk. *Id*. Plaintiff's representative cross-examined the VE, asking if an individual who was unable to use her hands in a repetitive motion would be able to do these jobs, to which the VE replied that she would not (AR 376-77). Plaintiff's representative did not ask the VE to elaborate as to how plaintiff's non-exertional impairments, specifically major depressive disorder, affected the job base. *Id*.

Plaintiff claims that it is "basic law" that the ALJ was not permitted to find a claimant not disabled using the grids when the claimant "also has non-exertional limitations, such as

8

depression" (#20, p. 5). The court disagrees. As discussed above, in *Hoopai v. Astrue*, the Ninth Circuit explicitly came to the opposite conclusion. An ALJ is permitted to rely exclusively on the grids even when plaintiff's suffers from non-exertional limitations unless those limitations are "sufficiently severe" so as to significantly limit the range of work permitted by a plaintiff's exertional limitations. At step two, the ALJ found plaintiff's depression to be "severe" (AR 29). However, the ALJ found that this impairment only caused plaintiff to be limited to the performance of simple, repetitive tasks, which in turn limited her to unskilled work (AR 31). Reviewing plaintiff's medical records in detail, the ALJ found that plaintiff's depression has "remained essentially stable since 2004, with slight exacerbations caused by situational stressors" (AR 32-36). The ALJ found that plaintiff could perform a full range of light work, with a limitation to simple, repetitive tasks. This limitation is not "sufficiently severe" so as to significantly limit the range of work permitted by plaintiff's exertional limitations. Further, the Ninth Circuit has "not previously held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation." As such, the court finds that substantial evidence supports the ALJ's conclusion that plaintiff's depression was not a "sufficiently severe non-exertional limitation that prohibited the ALJ's reliance on the grids." *Hoopai*, 499 F.3d at 1077.[3]

**C.     Opinions of Plaintiff's Treating Physicians**

Plaintiff asserts that the ALJ improperly discredited the opinions of two of plaintiff's treating physicians, Dr. Daines and Dr. Gonzalez (#20, p. 6). Specifically, the ALJ did not give

---

[3]The court also agrees with defendant that the ALJ's erroneous reference to Medical-Vocational Rule 202.14 is harmless error (#23, p. 5, AR 40). The appropriate grid rule in this case is 202.13. However, the grids are applicable in this case, and direct a finding of non-disability.

9

specific and legitimate reasons for rejecting these physicians' opinions, and "provided only sparse reasons without any true support for rejecting these positions." *Id*. p. 7-8. Defendant responds that the ALJ gave valid reasons for rejecting the opinions of Drs. Daines and Gonzalez (#23, p. 5). Specifically, The ALJ rejected Dr. Daines's opinion because it was inconsistent with his own treatment notes. *Id*. These reasons were valid, and plaintiff's "alternative interpretation is insufficient to invalidate the ALJ's decision or the substantial evidence upon which it is based." *Id*. p. 7. The ALJ rejected Dr. Gonzalez's opinion because it was ambiguous and unclear as to whether plaintiff could work. *Id*. p. 6. Plaintiff maintains that the ALJ improperly rejected these doctors opinions, and "blindly supported the non-examining, non-treating physicians' opinions." (#25, p. 3). Plaintiff argues that even if Dr. Daines' treatment notes that plaintiff's condition had improved conflict with his opinion that plaintiff could not work, this does not demonstrate that Dr. Daines believed plaintiff could work. Dr. Daines' note of improvement does not show that he believed plaintiff could "hold down an 8-hour a day job, five days a week, 50 weeks a year." *Id*.

Cases within the Ninth Circuit distinguish between the opinions of (1) treating physicians, (2) examining physicians, and (3) non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinions of treating physicians are afforded greater weight than the opinions of other physicians because treating physicians "are employed to cure and thus have a greater opportunity to know and observe the patient as an individual...." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted). "A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) *citing* SSR 96-2p.

10

The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted, *Magallenes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989); however, an ALJ may not reject the treating physician's opinion if it is contradicted by other physicians' opinions unless the ALJ "makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id.*, *quoting Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *see also Lester,* 81 F.3d at 830. "If the treating physicians' opinions are uncontroverted, those reasons must be clear and convincing." *Smolen*, 80 F.3d at 1285. The opinion of an examining physician is, in turn, entitled to more weight than that of a non-examining physician. *Lester*, 81 F.3d at 830. The ALJ must provide clear and convincing reasons to reject the uncontradicted opinion of the examining physician, and "specific and legitimate" reasons if the examining physician's opinion is contradicted by that of another doctor. *Id*. at 830-31.

Regarding a form completed by Dr. Daines, plaintiff's treating mental health physician, the ALJ stated: "While there is a form dated June 28, 2005 from Dr. Daines indicating that the claimant would be unable to work for 12 months or longer due to major depressive disorder, I give reduced weight to this opinion. It was not prepared as part of the claimant's treatment history. It is also contradicted by the doctor's own treatment notes, including his opinion made three months later that her depression was stable and that she had a GAF of 70, indicative of only mild symptoms" (AR 36, citing AR 228). Prior to the rejection of this form, the ALJ reviewed in detail Dr. Daines's treatment records and chart notes starting on November 23, 2004 through September 6, 2005 (AR 33-34).

Regarding a letter written by Dr. Gonzalez (AR 350), the ALJ stated that although she considered this letter, "it is ambiguous and fails to shed any light on the claimant's ability to

11

work" (AR 39). The letter stated that plaintiff was being treated for major depressive disorder, hypertension, dyslipidemia, recurrent migraine headaches, obesity, degenerative arthritis in her neck and hands, and presumed emphysema, and that plaintiff required multiple medications to control her problems. Dr. Gonzalez further stated: "Although it is unclear if she can work in a full time capacity, she has been referred to vocational rehabilitation for further evaluation. With respect to her mental health, I am aware she takes psychiatric medications for her depression, however I would defer any other information regarding this problem to her mental health providers" (AR 350).

Both Dr. Daines's and Dr. Gonzalez's opinions are contradicted by the opinions of other physicians. With regard to plaintiffs, mental condition, Dr. James Doornink, an examining psychologist determined that plaintiff could perform "simple, but not detailed or complex tasks," could "interact with the public, supervisors, and coworkers," and could "sustain concentration and attention for at least simple one and two step tasks." He also noted that plaintiff's prognosis was "guarded to good" (AR 254-55). Dr. Sally Skewis, a non-examining state agency psychologist found that plaintiff was moderately limited in her ability to understand and remember detailed instructions, and moderately limited in her ability to carry out detailed instructions (AR 279). Dr. Helena Mercy, a non-examining state psychologist found that plaintiff suffered from severe impairments, but that plaintiff's impairments were not expected to last twelve months; therefore, they were not disabling (AR 175).  With regard to plaintiff's physical condition, Dr. Yco determined that plaintiff was capable of performing work at a medium exertional level (AR 173). A non-examining State agency physician also found that plaintiff was capable for performing

work at a medium exertional level (AR 284).[4]

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *citing Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In this case, the two opinions rejected by the ALJ are contradicted by the opinions of other physicians. Therefore, the ALJ needed only give specific, legitimate reasons that are based on substantial evidence in the record for disregarding these opinions. The ALJ gave such reasons for disregarding both Dr. Daines' and Dr. Gonzalez's opinions. The ALJ found that Dr. Daines' June 28, 2005 opinion was contradicted by his own treatment notes. The ALJ reviewed these treatment notes in detail. This is a specific, legitimate reason for rejecting Dr. Daines' June 28, 2005 opinion, which is based on substantial evidence in the record. The ALJ stated that she considered the statement by Dr. Gonzalez in his May 10, 2007; however, she found that the letter was "ambiguous" and failed "to shed any light on the claimant's ability to work." However, the ALJ extensively reviewed Dr. Gonzalez's treatment notes. The ALJ gave specific and legitimate reasons for disregarding Dr. Gonzalez's letter. The letter did not specify whether Dr. Gonzalez believed plaintiff's physical ailments precluded her from working. Rather, Dr. Gonzalez explicitly stated that it was "unclear" whether plaintiff could work. Such ambiguity is a specific and legitimate reason for disregarding this letter. Therefore, the ALJ's decision to disregard the opinions of Drs. Daines and Gonzalez is upheld.

---

[4] The ALJ also gave reduced weight to Dr. Yco's and the state agency physician's opinions, stating that he gave plaintiff "the benefit of the doubt in limiting her to light work" (AR 39). Plaintiff does not object these findings.

### D.   Side Effects of Plaintiff's Medication

Plaintiff contends that the ALJ did not develop the record on medications, and did not include these side effects in the determination of plaintiff's RFC, despite plaintiff's complaints of significant side effects from her medications (#20, p. 8). Defendant's position is that it is plaintiff's burden to establish disabling side effects from her medications. Plaintiff has relied exclusively on her own statements to establish the existence of side effects, and has not identified any objective medical evidence to corroborate her complaints, which is insufficient to establish a finding of disabling side effects (#23, p. 8). Plaintiff argues that Social Security regulations require the ALJ to consider the side effects of plaintiff's medication, and that the ALJ has a duty to fully develop the record by soliciting information related to side effects and to comment on them in her decision (#25, p. 4).

During plaintiff's hearing, her representative asked her to list her medications and describe the side effects of each. Plaintiff stated that her anxiety medication, her migraine medication, "Realplex," and a muscle relaxant, Flexeril, cause drowsiness. She also stated that a high cholesterol medication causes weakness (AR 372). Plaintiff completed a Disability Report, Form SSA 3368, on July 6, 2004. In this form, plaintiff stated that Buspirone, an anxiety medication causes lethargy, and that Lexapro, an anti-depressant, causes grogginess (AR 109). However, at the hearing, plaintiff testified that Lexapro had no side effects, and that she "really...like[d] that one" (AR 371-72). Plaintiff completed a Disability Report - Appeal form on November 8, 2004. At this time, plaintiff listed all of her medications, but did not note any side effects (AR 135, 137). On March 9, 2006, plaintiff completed another Disability Report - Appeal. In this report, plaintiff noted that she took Lexapro and Buspirone for depression, and they neither had any side effects (AR 140). She also stated that she took Tramadol and Naprasen for back and neck pain,

14

and that they caused her to feel light headed. *Id*. Additionally, Axbrt and Prochlorperazine, migraine medications "knock[] [her] out" (AR 141). Plaintiff completed another Disability Report - Appeal form on December 4, 2006, which repeated the same side effect as in the March 9, 2006 report (AR 162).

Plaintiff's medical records contain very little discussion of side effects. On November 23, 2004, plaintiff told Dr. Daines that she discontinued her prescription of Wellbutrin after three days because it caused nausea, jitters, and ringing in her ears (AR 200-201). The fact that plaintiff suffered side effects from Wellbutrin, and thus discontinued this medication, is again noted on medical charts from Washoe Medical Center dated June 24, 2005 and August 19, 2005 (AR 230, 317-318). On an outpatient psychiatric evaluation taken on April 2, 2004, it is noted that plaintiff was placed on Remeron, an anti-depressant. However, plaintiff discontinued taking the Remeron after one dose because it made her drowsy (AR 211). Because of the negative reaction to Remeron, plaintiff was placed on Lexapro, which she continues to take, apparently without side effects (AR 213). A medical chart from Washoe Medical Clinic, dated May 27, 2005, notes that Chlorphenamine, an allergy medication, causes plaintiff drowsiness (AR 231).

Although plaintiff claims that the ALJ improperly failed to consider the side effects of plaintiff's medications, including drowsiness and weakness, plaintiff "offers no objective evidence that her medications" caused these symptoms. *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002). "The only evidence regarding these symptoms is [plaintiff's] own statements to her doctor and her testimony at the hearing." *Id*. The ALJ property discredited plaintiff's statements regarding her pain and other symptoms using "ordinary techniques of credibility evaluation." *Id*. The ALJ noted that plaintiff's statements are contradicted by the medical evidence, that plaintiff's activities of daily living are inconsistent with disability, and that plaintiff

15

applied for and received unemployment benefits for a portion of the time she claims disability (AR 40). Plaintiff submits contradictory statements on the side effects of certain medications. Specifically, plaintiff stated at one time that Lexapro caused drowsiness; however, on numerous other occasions, plaintiff denied that Lexapro caused side effects. Additionally, plaintiff complained to her physicians about the side effects of two medications, Remeron and Wellbutrin, and due to the side effects, plaintiff discontinued use of these medications. There are no notations in plaintiff's medical history that she complained to her physicians of side effects of medications she is currently taking. Plaintiff has presented no objective evidence that her medications caused severe drowsiness or weakness, and the ALJ properly discounted plaintiff's credibility regarding her pain and other symptoms. As such, the ALJ's decision is supported by substantial evidence.

### E.     Severity of Plaintiff's Migraines

Plaintiff argues that the ALJ erred because she found plaintiff's history of migraines to be "not severe" (#20, p. 9). Plaintiff's medical records include extensive complaints of migraines, and despite medication, plaintiff's migraines "were ongoing, and remained a problem." *Id*. Defendant's position is that it is irrelevant whether the ALJ found plaintiff's migraines to be severe because she concluded plaintiff had other severe impairments (#23, p. 9). Therefore, the ALJ considered all of plaintiff's impairments, whether severe or non-severe, in determining plaintiff's RFC. *Id*., citing 20 CFR §§ 404.1545, 416.945. Further, plaintiff failed to establish that her migraine headaches resulted in any functional limitations because the medical evidence indicated that plaintiff's migraines were well controlled with medication and had not prevented plaintiff from working in the past. *Id*. Plaintiff maintains that plaintiff's migraines constitute a severe impairment and that plaintiff's medical records are replete with entries discussing the functional limitations plaintiff suffered because of her migraines (#25, p. 4).

16

In the second step of the five-step sequential evaluation process, the ALJ is to consider the "medical severity" of a claimant's impairments. "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). To determine a plaintiff's RFC when a plaintiff has more than one impairment, the ALJ "will consider all of [a claimant's] medically determinable impairments..., including [a claimant's] medically determinable impairments that are not 'severe.'" 20 C.F.R. §§ 404.1545(a)(2), 416.945 (a)(2).

The court agrees with defendant that it is irrelevant whether the ALJ found plaintiff's migraines specifically to be severe. The ALJ found plaintiff to suffer from both exertional and non-exertional severe impairments. Therefore, pursuant to Social Security regulations, she was required to consider all of plaintiff's impairments, including her impairments that were not severe, when determining plaintiff's RFC at step four. *Id*. Accordingly, "[e]ven assuming that the ALJ erred in neglecting to list the [migraine headaches] at Step 2, any error was harmless." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). As in *Lewis*, the ALJ here "extensively discussed [plaintiff's migraine headaches] at step 4 of the analysis." *Id*. The ALJ noted that tests conducted in regard to plaintiff's headaches in 2004 were normal (AR 33). Plaintiff sought treatment for migraines on August 4, 2004, and reported that she suffered from migraines since the age of ten, and experienced them two to four times a month (AR 36). On February 7, 2006, Plaintiff also stated that she suffered severe migraines (AR 38). However, plaintiff reported improvement on November 12, 2004, her migraines were noted to be controlled on December 13, 2005, and a CT scan of plaintiff's head performed on December 20, 2005 was normal (AR 35-38). Based on this evidence, the ALJ determined that plaintiff's statements regarding her pain were not "particularly convincing or credible." Specifically, the ALJ stated: "The claimant embellishes her symptoms.

As indicated previously, the medical evidence consistently indicated that her headaches were well controlled, yet she described severe headaches in a statement to the Administration dated February 7, 2006, only to be contradicted by her denial of recent headaches to her physician three weeks later" (AR 39, citing AR 160, 313). The decision reflects that the ALJ considered plaintiff's migraines at step four. "As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless." *Lewis*, 498 F.3d at 911.

## V. CONCLUSION

Based on the foregoing, the court recommends that plaintiff's motion for reversal of the Commissioner's decision (#20) be **DENIED** and defendant's cross motion to affirm (#23) be **GRANTED**.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

///

///

///

///

18

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for reversal of the Commissioner's decision (#20) be **DENIED** and defendant's cross motion to affirm (#23) be **GRANTED**.

**DATED:** July 29, 2009

_____
**UNITED STATES MAGISTRATE JUDGE**